# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CARL DONNELL LONG,

        Petitioner,

v.                                       Case Number: 08-CV-10899

TOM PHILLIPS,

        Respondent.

_____/

## OPINION AND ORDER DENYING "PETITION FOR WRIT OF HABEAS CORPUS" AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Carl Donnell Long, a state inmate currently incarcerated at the Newberry Correctional Facility in Newberry, Michigan, filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* pleadings, Petitioner challenges his convictions and sentences for two counts of armed robbery, Mich. Comp. Laws § 750.529. He was sentenced to two terms of twelve to twenty-five years in prison for those convictions. Having fully considered the parties' positions and briefs, the court will deny the petition and will decline to issue a certificate of appealability.

## I. BACKGROUND

Petitioner's convictions arise because of an armed robbery which occurred on June 26, 2003, at approximately 1:00 a.m., in Detroit, Michigan. Trial in this case began on November 17, 2003. Testimony revealed the following.

On the night in question, Shaquela Moore, Kira Twilley, and Anthony Banks, the complainants in this case, were on their way to pay a caterer for Moore and Twilley's wedding reception, when they stopped at a gas station in Detroit, Michigan, to purchase

drinks and snacks.  Twilley was in the front passenger seat and Banks was sitting in the

back seat behind her.  At the time, Twilley was carrying approximately $1170 with her,

along with her identification, a checkbook, and other items in a small, zippered purse.

After Banks made his purchase, and, as he was getting back into the car, a man

approached him from behind.  Moore, Twilley, and Banks identified Petitioner as the

man who attempted to enter the car.

Moore and Twilley both testified that Petitioner had a cloth-covered article in his

hand, which they believed to be a gun.  According to Twilley, Petitioner said "give me

your shit, bitch or I'll blast your ass."  (Trial Tr. 198, 202-03, Nov. 17, 2003.)  Moore and

Twilley testified that Petitioner held his wrapped hand in the shape of a gun while he

rummaged around the back seat with the other hand.  Twilley said that she attempted to

shove her bag under the seat, but when Petitioner saw the bag, he reached over the

seat and grabbed it from her hand.  Twilley said she did not struggle with Petitioner

because she feared he would shoot them.  Moore testified that she initially struggled

with Petitioner to get control of the purse, because it contained all the money, but she

ultimately let go because she too feared that he would shoot them.

After Petitioner got the purse, he ordered Moore and Twilley out of the car and

then ran away.  The complainants drove after Petitioner but could not follow him

because he ran inside a gated apartment complex.  The complainants then drove back

to the gas station and called the police.

When the police arrived at the gas station, all three complainants described their

perpetrator as a bald, African-American male in his late twenties to early thirties with a

small moustache.

2

On that same day, in the afternoon, as Moore was leaving her job at a video store near the place of the robbery, she looked through a window and saw the man who robbed them.  She told her mother, Mattie Scott, who was with her at the time, that she had just seen the man who had robbed her.  Subsequently, Moore and her mother followed that man into a Farmer Jacks store and asked the security guard inside to phone the police.  They then waited until the police arrived and arrested the man.

Scott identified a photograph of Petitioner as the person to whom Moore had pointed; the photograph was admitted into evidence.

The complainants also testified that Petitioner's appearance on the night of the robbery was the same as that at his preliminary examination but different from his appearance at trial because he had hair on his head at the time of trial.

Detroit Police Officer Jason Neville arrested Petitioner based on the information given to him by Moore.  Officer Neville searched Petitioner incident to arrest, but did not recover any weapons, any money, or any of Moore and Twilley's property.

Petitioner was subsequently charged with two counts of armed robbery, two counts of unarmed robbery, one count of assault with intent to rob while armed, and one count of assault with intent to rob while unarmed.

Petitioner did not testify at trial.

The jury found him guilty of the two counts of armed robbery and acquitted him of the remaining charges.  On December 3, 2003, he was sentenced as stated above.

Following an unsuccessful motion for a new trial, which alleged ineffective assistance of trial counsel and insufficient evidence, Petitioner filed his direct appeal in the Michigan Court of Appeals, raising the following four claims:

3

I.      [Petitioner] is entitled to a new trial because his constitutional rights to the effective assistance of counsel were denied where counsel failed to investigate, file notice, and present the defense of alibi in this case where he was presented with evidence that [Petitioner] was at his brother's home at the time of the charged offense.

II.     [Petitioner's] conviction of armed robbery violates due process of law where the evidence was insufficient to support a finding that the robbery was armed.  The trial court's denial of a new trial was an abuse of discretion.

III.    Where the accuracy of the eyewitness identification was seriously at issue, the trial judge committed reversible error by failing to *sua sponte* give a cautionary instruction on the unreliability of eyewitness identification testimony, in violation of [Petitioner's] due process right to a properly instructed jury.  The trial court's denial of a new trial was an abuse of discretion.

IV.     Trial counsel's failure to request a cautionary instruction on the unreliability of eyewitness identification testimony constituted ineffective assistance.  The trial court's denial of a new trial was an abuse of discretion.

On March 22, 2005, the Michigan Court of Appeals affirmed Petitioner's

convictions and sentences in an unpublished per curiam opinion.  *People v. Long*, No.

252733, 2005 WL 658923 (Mich. Ct. App. Mar. 22, 2005).

Petitioner subsequently filed an application for leave to appeal that decision in

the Michigan Supreme Court, raising the same claims.  On September 28, 2005, the

Michigan Supreme Court denied his application by standard order.  *People v. Long*, 703

N.W.2d 812 (Mich. 2005).

Thereafter, Petitioner filed a motion for relief from judgment in the trial court,

raising the following claims:

I.      [Petitioner] was denied his due process [rights] [to] the Fourteenth Amendment because his appellate counsel failed to submit an affidavit from an alibi witness that was necessary to establish the factual basis for his claim of ineffective assistance of trial counsel.

4

II.     [Petitioner] was denied his due process [rights] to the Fourteenth Amendment because his appellate counsel failed to raise the "dead bang winner" of ineffective assistance of trial counsel for trial counsel's failure to request an expert witness.

III.    [Petitioner] was denied his due process right[s] [to] the Fourteenth Amendment fair trial when the prosecutor relied upon perjured testimony to obtain [his] conviction.

IV.     [Petitioner] was denied his due process right[s] to the Fourteenth Amendment where the evidence was insufficient to convict him of armed robbery.

The trial court denied Petitioner's post conviction motion on October 24, 2006. Petitioner filed an application for leave to appeal that decision in the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Long*, No. 275853 (Mich. Ct. App. June 18, 2007). Petitioner's application for leave to appeal that decision, filed in the Michigan Supreme Court, was also denied "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Long*, 741 N.W.2d 341 (2007).

Petitioner filed the pending petition on March 4, 2008, challenging the constitutionality of his imprisonment on the following grounds:

I.      Petitioner is entitled to a new trial because his constitutional rights to the effective assistance of counsel were denied where counsel failed to investigate, file notice, and present the defense of alibi in this case where he was presented with evidence that [Petitioner] was at his brother's home at the time of the charged offenses.

II.     Petitioner's conviction of armed robbery violates due process of law where the evidence was insufficient to support a finding that the robber was armed.  The trial court's denial of a new trial was an abuse of discretion.

5

III.   Where the accuracy of the eyewitness identification was seriously
at issue. The trial judge committed reversible error by failing to *sua
sponte* give a cautionary instruction on the unreliability of
eyewitness identification testimony, in violation of [Petitioner's] due
process right to a properly instructed jury. The trial court's denial of
a new trial was an abuse of discretion.

IV.   Trial counsel's failure to request a cautionary instruction on the
unreliability of eyewitness identification constituted ineffective
assistance.  The trial court's denial of a new trial was an abuse of
discretion.

V.    Petitioner was denied his due process of the Fourteenth
Amendment because his appellate counsel failed to submit an
affidavit from an alibi witness that was assistance of trial counsel.

VI.   Petitioner was denied his due process to the Fourteenth
Amendment because his appellate counsel failed to raise the "dead
bang winner" of ineffective assistance of trial counsel for trial
counsel's failure to request an expert witness.

VII.  Petitioner was denied his due process right of the Fourteenth
Amendment fair trial when the prosecutor relied upon perjured
testimony to obtain [his] conviction.

VIII. Petitioner was denied his due process right to the Fourteenth
Amendment where the evidence was insufficient to convict him of
armed robbery.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs

this court's habeas corpus review of state-court decisions and states in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted with
respect to any claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented at the State
court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts.  An "unreasonable application" occurs

when the state court identifies the correct legal principle from a Supreme Court's

decision but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A federal habeas court may not find

a state adjudication to be "unreasonable" "simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly."  *Id.* at 411.

### III.  DISCUSSION

### A.  Ineffective Assistance of Counsel Claims

In his first claim, Petitioner alleges that he was denied the effective assistance of

trial counsel when trial counsel did not present Petitioner's brother as an alibi witness.

In his fourth claim, Petitioner also asserts that he was denied the effective assistance of

trial counsel when counsel failed to request a cautionary instruction on the problems

with eyewitness testimony.  The court will first address these claims, because the

Michigan Court of Appeals decided them on their merits.  The court of appeals stated:

> Although defendant argues that there could be no sound trial
> strategy for failure to investigate and present an alibi defense, an
> investigation involves more than interviewing the potential witness, and

7

defendant did not otherwise establish that counsel failed to investigate. Given that counsel's theory of defense was mistaken identity–that defendant was not at the crime scene when the incident occurred–the fact that the address defendant gave police put defendant in the vicinity of the crime scene tended to corroborate complainants' testimony rather than rebut it. Because counsel did not testify, it is unclear whether an investigation was performed and what counsel's reasons for not providing an alibi defense were. Given that this Court's review is limited to the facts contained in the record, *People v. Rodriguez*, 251 Mich.App 10, 38; 650 NW2d 96 (2002), defendant has not rebutted the presumption that counsel's failure to present an alibi defense was trial strategy. And this Court will not evaluate trial strategy using hindsight. *People v. Matuszak*, 263 Mich.App 42, 58; 687 NW2d 342 (2004).

Furthermore, defendant has failed to establish a reasonable probability that the results of the proceeding would have been different. Defendant argues that the descriptions given by complainants to the police differed greatly from defendant's actual physical appearance, and that the jury could have acquitted defendant if it had been told that defendant was elsewhere when the incident occurred. We find that the discrepancies in descriptions were not significant. Moreover, Moore instantly recognized defendant later that day and followed him until police arrived to arrest him. Each complainant positively identified defendant at the preliminary hearing and at trial, and Moore's mother identified defendant as the man she followed after Moore identified him. The evidence against defendant was considerable. It is not probable or even likely, given the evidence against defendant, that the testimony of defendant's brother–a biased witness–would have altered the outcome of the trial.

*People v. Long*, No. 252733, 2005 WL 658923, at *1 (Mich. Ct. App. Mar. 22, 2005)

(footnote omitted).

Regarding Petitioner's argument that trial counsel was ineffective for failing to

request a cautionary instruction, the court of appeals stated:

Thus, no error resulted from the court's failure to give the instruction. Our decision on this issue renders moot defendant's argument that counsel was ineffective for failing to request the supplemental instruction. The basis for a claim of ineffective assistance cannot be the failure to make a futile request. *People v. Riley*, 468 Mich. 135, 142; 659 NW2d 611 (2003).

8

*Long*, No. 252733, 2005 WL 658923, at *4.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688).  However, when assessing counsel's performance, the reviewing court should afford counsel great deference.  *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  A petitioner may establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Strickland*, 466 U.S. at 687.  In the "prejudice" prong of the *Strickland* test, the Supreme Court held that a defendant must show more than "that the errors had some conceivable effect on the outcome of the

9

proceeding;" instead, the defendant must be able to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. No matter how deficient an attorney's performance, the *Strickland* Court reasoned, in the absence of a showing of prejudice, "it cannot be said that the conviction [ ] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Moreover, trial counsel is not obligated to call a witness whose testimony is not beneficial to the petitioner. In order to "present an ineffective assistance of counsel claim based on a failure to call a witness, the petitioner must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result." *Malcum v. Burt*, 276 F.Supp.2d 664, 679 (E.D. Mich. 2003) (citing *United States ex.rel. Jones v. Chrans*, 187 F.Supp.2d 993, 1009 (N.D. Ill. 2002)).

Here, in regard to Petitioner's claim that counsel did not properly investigate and should have called Petitioner's brother as an alibi witness, the court of appeals concluded that Petitioner failed to overcome the presumption that his trial counsel's decision to not present his brother as an alibi witness was trial strategy. The court of appeals also concluded that Petitioner had not demonstrated that the absence of his brother's testimony was outcome-determinative. It pointed to the significant evidence of Petitioner's guilt, including Moore's instant recognition of Petitioner later that day and that each of the complainants positively identified Petitioner at the preliminary examination and at trial. The court of appeals also noted that the differences in the

10

descriptions given by the complainants were not significant.  *Long*, No. 252733, 2005

WL 658923, at *2.

   And, regarding trial counsel's decision not to request a cautionary jury instruction

on the problems with eyewitness testimony, the court of appeals noted that Michigan

law does not require a trial court to *sua sponte* give such an instruction and that the

standard jury instruction on identification has been held to adequately address the

concerns with eyewitness testimony.  *See People v. Cooper*, 601 N.W.2d 409, 417

(Mich. 1999) (citing *People v. Hubbard (After Remand)*, 552 N.W.2d 493, 506 (1996)).

The court of appeals also determined that Petitioner was not entitled to a supplemental

jury instruction on identification on the facts of this case.  It concluded that because the

trial court did not err when it did not *sua sponte* give the jury a cautionary instruction on

identification, Petitioner's trial counsel was not ineffective for requesting such an

instruction.  The court of appeals further explained that any request for a cautionary

instruction by Petitioner's trial counsel would have proven futile and that the refusal to

make a futile request cannot form the basis of an ineffective assistance of counsel

claim.  *Long*, No. 252733, 2005 WL 658923, at *4.

   This court therefore concludes that the decision of the court of appeals was not

an objectively unreasonable application of clearly established federal law as determined

by the United States Supreme Court.  Petitioner cannot meet the prejudice prong of the

*Strickland* test.  Rather, Petitioner was clearly identified by people who had seen him.

Petitioner is not entitled to habeas relief regarding this claim.

11

## B. Insufficient Evidence Claim

In his second and eighth claims, Petitioner asserts that he was denied due process because the prosecution failed to present sufficient evidence that he was armed. The court will consolidate these claims together for clarity.

In addressing the insufficient evidence claim, the court of appeals stated:

> A claim of insufficient evidence is reviewed de novo. *People v. Lueth*, 253 Mich.App 670, 680; 660 NW2d 322 (2002). "A court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Johnson*, 460 Mich. 720, 723; 597 NW2d 73 (1999), citing *People v. Hampton*, 407 Mich. 354; 285 NW2d 284 (1979). To convict a defendant of armed robbery, the prosecutor must prove: (a) an assault occurred, (b) property was feloniously taken from the victim, and (c) defendant was armed with a weapon described by the statute. *People v. Norris*, 236 Mich.App 411, 414; 600 NW2d 658 (1999). MCL 750.529 defines weapon as, "a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon." In *People v. Banks*, 454 Mich. 469; 563 NW2d 200 (1997), our Supreme Court specifically addressed the evidence required to satisfy the "armed" element of armed robbery. The Court noted that a victim's subjective belief that the defendant had a weapon was insufficient; there had to be an actual article fashioned in a manner to cause a reasonable belief that a weapon was being used. *Id.* at 472-473, citing *People v. Parker*, 417 Mich. 556, 565; 339 NW2d 455 (1983).
>
> The Court found insufficient a victim's testimony that he did not see a bulge in the defendant's coat and the defendant's hand was not shaped like a weapon, *Banks*, *supra* at 472, citing *People v. Saenz*, 411 Mich. 454, 458; 307 NW2d 675 (1981); however a bulge under a defendant's shirt combined with an accomplice's statement that the defendant had a gun was minimally sufficient, *id.* at 473-475, citing *People v. Jolly*, 442 Mich. 458; 502 NW2d 177 (1993). Both Moore and Twilley testified that they believed defendant had a gun. Defendant's hand was under a towel shaped like a gun. Moreover, defendant acted like he had a weapon when he did not use the towel–wrapped hand to search for items to steal, or when he struggled for possession of the bag. And Twilley testified that defendant told her to give him her "shit" or he'd blast her. Although words alone are insufficient to establish the armed element, words combined with an article intended to convince the victim of a weapon are sufficient.

12

*Banks*, *supra* at 473-475.

*Long*, No. 252733, 2005 WL 658923, at * 2-3.

A claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254. Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state-law question regarding the elements of the crime predicates the enforcement of [Petitioner's] federal constitutional right." *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005).

Sufficient evidence supports a conviction if, after viewing the evidence (and all inferences to be drawn therefrom) in a light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1148 (2004). This standard of review obviously does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie,* 326 F.3d at 727. This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense. However, if the state has made the absence of a defense an element of the crime, sufficiency of evidence on the issue will then be relevant. *Allen v. Redman*, 858 F.2d 1194, 1196-98 (6th Cir. 1988). Circumstantial evidence may support

13

a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.  *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003), *cert. denied*, 124 S.Ct. 1601 (2004); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

Under Michigan law, the elements of armed robbery are: (1) an assault, (2) a taking of property from the victim's person or presence, and (3) the defendant was armed with a dangerous weapon or an article used or fashioned in a manner to lead a reasonable person to believe it was a dangerous weapon.  *People v. Norris*, 600 N.W.2d 658, 660 (Mich. 1999) (citing *People v. Johnson*, 547 N.W.2d 65, 71 (Mich. 1996).  The prosecution is not required to prove that the victim actually saw the article that was used or fashioned as a dangerous weapon or to introduce the article into evidence provided that objective evidence of the article exists, which includes circumstantial evidence.  Moreover,

> [t]he existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one.  Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article.

*People v. Jolly*, 502 N.W.2d 177, 182 (Mich. 1993); *See also*  Mich. Comp. Laws § 750.529.

The record in this case reasonably supports the decision of the court of appeals that sufficient evidence was presented at trial.  First, both Moore and Twilley testified that Petitioner had a cloth-covered article in his hand that appeared to be a gun.  Second, both Moore and Twilley believed that Petitioner would shoot them if they did not give him Twilley's purse.  Third, Twilley testified that Petitioner said "give me your shit,

14

bitch or I'll blast your ass."  (Trial Tr. 198, 202-03, Nov. 17, 2003.)  Although Moore
could not remember what Petitioner said, she testified that she let go of Twilley's purse
because she believed that she would be shot based on Petitioner's language and the
article in Petitioner's hand.  Therefore, viewed in the light most favorable to the
prosecution, sufficient evidence was presented for the jury to conclude that Petitioner
used, or fashioned, an article in manner that would lead a reasonable person to believe
that the article was a dangerous weapon.  *Jolly*, 502 N.W.2d at 182; *See also* Mich.
Comp. Laws § 750.529.

Accordingly, the court concludes that the court of appeals did not unreasonably
decide Petitioner's claim in light of clearly established Supreme Court law, and
Petitioner is therefore not entitled to habeas relief regarding this claim.

### C.  Jury Instruction Error Claim

In his third claim, Petitioner alleges that he was denied a fair trial because the
trial court failed to *sua sponte* give the jury a cautionary instruction on the problems with
eyewitness testimony.  Regarding this claim, Respondent argues that review of the
claim is barred by procedural default; Petitioner did not request such a cautionary
instruction and did not object to the jury instructions given.  As a result, in addressing
this issue, the Michigan Court of Appeals applied a plain-error standard, holding:

> Claims of instructional error are reviewed de novo.  *People v.
> Hubbard (After Remand)*, 217 Mich.App 459, 487; 552 NW2d 493 (1996).
> Jury instructions must be read as a whole rather than extracted piecemeal
> to create error.  *People v. Aldrich*, 246 Mich.App 101, 124; 631 NW2d 67
> (2001).  An omission of an instruction is not error if the instructions in their
> entirety cover the substance of the omitted instruction.  *People v. Kurr*,
> 253 Mich.App 317, 327; 654 NW2d 651 (2002).  Failure to challenge an
> instruction waives error unless relief is required to avoid manifest injustice.
> *People v. Carines*, 460 Mich. 750, 761-762, 764; 597 NW2d 130 (1999).

15

Manifest injustice occurs if the omitted instruction concerns a basic and controlling issue in the case. *People v. Torres (On Remand)*, 222 Mich.App 411, 423; 564 NW2d 149 (1997).

Defendant argues that the court should have given an instruction regarding the unreliability of eyewitness identification consistent with the Michigan Supreme Court's opinion in *People v. Anderson*, 389 Mich. 155; 205 NW2d 461 (1973), *overruled in part People v. Hickman*, 470 Mich. 602, 603; 684 NW2d 267 (2004). However, this Court has found that *Anderson* did not require a special jury instruction. *People v. Cooper*, 236 Mich.App 643, 656; 601 NW2d 409 (1999). In *People v. Carson*, 217 Mich.App 801, 807; 553 NW2d 1, *vacated* 217 Mich.App 801, *adopted* 220 Mich.App 662, 678 (1996), this Court found that the principles in *Anderson* were adequately addressed by CJI2d 7.8 and noted that CJI2d 7.8 appeared to have been drafted to reflect the *Anderson* opinion. Nevertheless, the instruction defendant argues should have been given is apparently paragraph (4) of CJI2d 7.8. This Court in *People v. Storch*, 176 Mich.App 414, 418-420; 440 NW2d 14 (1989), indicated that failure to give, over objection, what is now CJI2d 7.8(4) was error when the instruction was supported by the evidence.

However, the instruction was not supported by the evidence here. Despite minor discrepancies, the complainants' descriptions of defendant generally matched his description at trial, complainants positively identified defendant at the preliminary hearing and at trial, and nobody other than defendant was ever identified as the robber. Moreover, Moore immediately identified defendant on sight several hours after the incident occurred, and she and her family followed defendant until police arrived. Because the complainants here never failed to identify defendant or never identified someone other than defendant as the robber in the instant case, and their descriptions generally matched that of defendant, the evidence did not support giving a supplemental jury instruction. Thus, no error resulted from the court's failure to give the instruction. Our decision on this issue renders moot defendant's argument that counsel was ineffective for failing to request the supplemental instruction. The basis for a claim of ineffective assistance cannot be the failure to make a futile request. *People v. Riley*, 468 Mich. 135, 142; 659 NW2d 611 (2003).

*Long*, No. 252733, 2005 WL 658923, at * 3-4.

The state appellate court's basis for this decision identified Petitioner's

procedural default, and the claim may only be reviewed if Petitioner can demonstrate

cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Gulertekin v.*

*Tinnelman-Cooper*, 340 F.3d 415, 423-24 (6th Cir. 2003). To establish "cause,"

Petitioner must "show some objective factor external to the defense impeded counsel's

effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488

(1986). Such objective impediments include "a showing that the factual or legal basis

for a claim was not reasonably available to counsel . . . or that 'some interference by

officials' made compliance impracticable." *Id.* (citations omitted). Constitutionally

ineffective assistance of trial counsel may constitute cause for a procedural default. *Id.*

To meet the "prejudice" requirement, a Petitioner must show "actual prejudice to his

defense at trial or on appeal." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993)

(citing *Wainwright v. Sykes*, 433 U.S. 72, 77-91 (1977)). Actual prejudice means "'not

merely that the errors . . . at trial created a *possibility* of prejudice, but that they worked

to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions.'" *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*,

456 U.S. 152, 170 (1982)). Where a petitioner fails to establish cause, it is not

necessary to determine whether prejudice occurred, because both cause and prejudice

are necessary to excuse a procedural default. *Hannah v. Conley*, 49 F.3d 1193, 1997

(6th Cir. 1995).

     In his appeal of right, Petitioner asserted that his trial counsel was ineffective for

failing to request a cautionary jury instruction on eyewitness testimony. As discussed

above, the court of appeals concluded that, under Michigan Law, the trial court was not

required to *sua sponte* give the jury a cautionary instruction on eyewitness testimony

and that Petitioner was not entitled to a supplemental identification instruction on the

facts of the case. *Long*, No. 252733, 2005 WL 658923, at * 3-4. Thus, Petitioner's

17

trial counsel was not objectively unreasonable when he did not request this instruction. Moreover, Petitioner cites no authority for the proposition that he has a constitutional right to a cautionary instruction on the problems with eyewitness testimony.

Additionally, Petitioner has failed to establish actual prejudice. Rather, the record demonstrates that the trial court in fact instructed the jury on the problems associated with eyewitness testimony by giving a near verbatim recitation of Michigan's standard jury instruction on this issue (CJI 3d 7.8). Moreover, the trial court also instructed the jury on the relevant factors to be considered in determining the credibility of all witnesses and in evaluating prior, inconsistent statements of witnesses.

Furthermore, shortly after the robbery, all three complainants described Petitioner as a bald, African-American male in his late twenties to early thirties with a small moustache. All three complainants also testified that Petitioner's appearance on the night of the robbery was the same at his preliminary examination but different from his appearance at trial because Petitioner had hair on his head at trial. None of the complainants identified anyone other than Petitioner as the robber, and one of the complainants immediately recognized Petitioner several hours after the robbery as he was walking down the street, and she followed him until the police arrived. Petitioner's trial counsel also vigorously attacked the reliability of the eyewitnesses' testimony and argued that no evidence corroborated the eyewitnesses' identifications of Petitioner.

Given Petitioner's failure to establish cause and prejudice to excuse the procedural default, review of this claim is therefore barred.

### D. Remaining Claims Are Also Barred

With respect to Petitioner's remaining claims (V and VI–ineffective assistance of

18

appellate counsel claims, and VII–prosecutorial misconduct claim), those claims were presented to the state courts in his motion for relief from judgment and subsequent appeals. Both state appellate courts denied relief by using the common form order stating that the appeal was denied because Petitioner failed "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Long*, No. 275853, (Mich.Ct.App. June 18, 2007); *People v. Long*, 741 N.W.2d 341 (2007). Thus, federal habeas review is barred by procedural default.

It is well-established in this circuit that the procedural bar set forth in Mich.Ct.R. 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). In *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (2002), the Sixth Circuit examined the form order used by Michigan state appellate courts and concluded that it presented a sufficient explanation that the ruling was based on the failure to comply with a state procedural rule. *Id.* Where a state court denies relief on independent and adequate state procedural grounds, as the state courts did here, a prisoner may only obtain habeas review of his claims if he can establish "cause and prejudice" or that the failure to review the claims would result in a "fundamental miscarriage of justice." *Strickler v. Greene*, 527 U.S. 263, 282-85 (1999).

A state prisoner's habeas claims are procedurally defaulted if the prisoner has failed to comply with an independent and adequate state procedural rule, thus causing default of the prisoner's federal claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This can occur when an individual fails to present an issue to a state appellate court upon the only opportunity to do so. *See Teague v. Lane*, 489 U.S.

19

288, 297-98 (1989); *Rust*, 17 F.3d at 160.  In *Coleman*, the Supreme Court held that if

the decision of the last state court to which a habeas petitioner presented his federal

claims fairly appeared to rest primarily on federal law, or to be interwoven with federal

law, and did not clearly and expressly rely on an independent and adequate state

ground, a federal court may address the petition.  *Id.* at 735.

The Sixth Circuit employs a four-part test to determine whether a state

procedural default bars federal habeas review. The inquiry is whether:

> (1) a state procedural rule exists that applies to the petitioner's claim, (2)
> the petitioner failed to comply with the rule, (3) the state court actually
> applied the state rule in rejecting the petitioner's claim, and (4) the state
> procedural rule is an adequate and independent ground upon which the
> state can rely to deny relief.

*Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (citing *Reynolds v. Berry*, 146

F.3d 345, 347 (6th Cir. 1998)); *see also Alexander v. Smith*, No. 06-1569, 2009 WL

426261 (6th Cir. Mich. Feb 20, 2009).

Here, the procedural rule relied upon by the state appellate courts to bar review

of these issues was firmly established and regularly applied at the time of Petitioner's

default.  Petitioner thus procedurally defaulted these habeas claims.


A state prisoner who fails to comply with a state's procedural rules waives the

right to federal habeas review absent a showing of cause for noncompliance and actual

prejudice resulting from the alleged constitutional violation, or a showing of a

fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 753; *Murray*, 477 U.S. at

485; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  The cause and prejudice test

should be applied to all occasions where a procedural default bars state litigation of a

constitutional claim.  *Coleman*, 501 U.S. at 750.

To the extent that Petitioner attempts to establish cause to excuse his procedural default by claiming that his appellate counsel was ineffective for failing to raise his claims in his direct appeal, he does not do so.  Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland*, 466 U.S. at 687.

The mere failure to raise a claim, even if it might have been meritorious on appeal, does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default.  The United States Supreme Court, in *Smith v. Robbins*, 528 U.S. 259, 288 (2000), stated:

> In *Jones v. Barnes*, 463 U.S. 745 (1983) [parallel citations omitted], we held that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g.*, *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").

*See also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000) (where claim was not "dead bang winner," the petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

In this case, the record reveals that various issues were raised in Petitioner's direct appeal, but that Petitioner's convictions were affirmed.  Petitioner fails to demonstrate that the issues allegedly ignored by his appellate counsel in his direct

appeal were clearly stronger than those that were presented, and he has failed to overcome the strong presumption that his counsel was competent.  Because Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test.  *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).

Neither has Petitioner established that a fundamental miscarriage of justice occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995); *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Here, Petitioner has made no such showing.  His assertion that his habeas

claims have merit does not establish a miscarriage of justice.  Petitioner's remaining claims are thus barred by procedural default and do not warrant federal habeas relief.

## IV.  CERTIFICATE OF APPEALABILITY

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[1]  28

---

[1]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides

U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made

a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would

find the district court's assessment of the constitutional claim debatable or wrong.  *See*

*Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by

demonstrating that . . .  jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  In applying this standard, a district court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of the

petitioner's claims.  *Id.* at 336-37.  When a federal district court denies a habeas claim

on procedural grounds without addressing the merits, a certificate of appealability

should issue if it is shown that jurists of reason would find it debatable whether the

petitioner states a valid claim of the denial of a constitutional right, and that jurists of

reason would find it debatable whether the district court was correct in its procedural

ruling.  *See Slack*, 529 U.S. at 484-85.  The court concludes that jurists of reason would

not find the court's assessment of the constitutional claims debatable or wrong, or that

the court's ruling regarding Petitioner's claims that are barred by procedural default is

debatable.  The court thus declines to issue Petitioner a certificate of appealability.

## V.  CONCLUSION

---

that "[t]he district court must issue or deny a certificate of appealability when it enters a
final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated above, IT IS ORDERED that Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.


                                         S/Robert H. Cleland
                                         ROBERT H. CLELAND
                                         UNITED STATES DISTRICT JUDGE

Dated:  December 31, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 31, 2009, by electronic and/or ordinary mail.


                                           S/Lisa Wagner
                                         Case Manager and Deputy Clerk
                                         (313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\08-10899.LONG.DENYHC.jr.wpd